UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN CALACE,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. Action No. 04-2613 (JAG)

OPINION

**GREENAWAY, JR., U.S.D.J.**

**INTRODUCTION**

      Plaintiff John Calace seeks review of the decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income Benefits, pursuant to 42 U.S.C. § 405(g).[1]  Plaintiff argues that the decision does not meet Third Circuit procedural requirements and is not supported by substantial evidence, and should therefore be reversed or, in the alternative, remanded to the Commissioner for reconsideration.  For the reasons set forth in this opinion, this Court finds that the Commissioner's decision in its current form is beyond meaningful judicial review and remands this case so that the Administrative Law Judge ("ALJ") may develop the record and explain her findings.

---

[1] This section of the Social Security Act (hereinafter "the Act") provides that any individual may obtain a review of any final decision of the Secretary made subsequent to a hearing to which she or he was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action.  42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

On April 3, 2001, Plaintiff filed an application for Supplemental Security Income benefits, alleging disability due to a heart condition, coronary disease, and sleep apnea. (Tr. 95-96.)[2] Following the Commissioner's denial of Plaintiff's application for benefits on October 17, 2001, Plaintiff filed a request for reconsideration on October 26, 2001. (Tr. 71-75.) The denial was affirmed on April 18, 2002. (Tr. 78.) Following Plaintiff's request for a hearing, dated April 22, 2002, Plaintiff appeared before Administrative Law Judge Michal L. Lissek (the "ALJ") on April 2, 2003. (Tr. 13.) ALJ Lissek issued her decision on April 21, 2003, finding that the Plaintiff was not eligible for Supplemental Security Income Benefits based upon disability. (Tr. 18.) The ALJ stated these findings:

1. The claimant has not been engaged in substantial gainful activity since August 3, 1998.

2. The medical evidence establishes that the claimant has severe sleep apnea and arteriosclerotic heart disease, but does not establish medical findings, which meet or equal in severity the clinical criteria, of any impairment listed in the Listing of Impairments.

3. The claimant's subjective allegations, including severe pain and other symptoms, are not credible, not consistent with the medical evidence, and not supported by the evidence of record.

4. The claimant has the residual physical functional capacity for a full range of sedentary work activity.

5. The claimant was 43 years old on the alleged onset date, which is defined as a "younger person." He has completed an 11th grade ("limited") education and he has had unskilled past work experience.

---

[2] The Act instructs the Secretary to file, as part of the answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr" refers to said transcript.

      6.      Based upon the claimant's residual physical functional capacity for a full range of sedentary work activity, as well as the vocational factors of his age, education, and work experience, Rule 204.24, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, directs a conclusion of "not disabled."

      7.      The claimant has not been under disability, as defined in the Social Security Act, as amended, since August 3, 1998.

(Tr. 17.) Based on these findings, ALJ Lissek concluded that Plaintiff was not eligible for Supplemental Security Income benefits under Section 1614(a)(3)(A) of the Social Security Act. (Tr. 18.) On April 6, 2004, the Social Security Appeals Council affirmed ALJ Lissek's decision. Plaintiff then filed the instant action seeking reversal of the Commissioner's decision or, alternatively, remand to the Commissioner for reconsideration, pursuant to 42 U.S.C. § 1383(c)(3).

## STATEMENT OF THE FACTS

**A.     Background**

John Calace was born on February 26, 1955, and was age 47 at the onset of his alleged disability. (Tr. 26.) He was born in Uruguay and attained United States citizenship in 1995. (Id.) He completed 11th grade in the United States and was self-employed as a truck driver for 20 years prior to the onset of his alleged disability. (Tr. 27.) Plaintiff testified that his job required loading and unloading boxes weighing between 75 to 100 pounds; in 1998, he began to experience shortness of breath, fatigue and dizziness, and sought treatment at Overlook Hospital. (Tr. 28.) Thereafter, he began regular visits to Dr. Anthony Iuzzolino. (Tr. 153-175.) Plaintiff testified that although he had surgery for implantation of a pace-maker in December 1998, his symptoms of fatigue and dizziness did not subside. (Tr. 29.) Plaintiff's medical history indicates

3

recurrent chest pain, dyspnea on exertion, significant obstructive sleep apnea, mild coronary artery disease, hyperlipidemia, and obesity. (Tr. 165.) His obstructive sleep apnea syndrome is marked by daytime somnolence, chronic fatigue, and dizziness. (Tr. 176-179.) The use of a continuous positive airway pressure machine ("CPAP") was instituted to treat Plaintiff's sleep apnea. (Tr. 40.)

**B.     Medical Evidence**

The record indicates that the Plaintiff has been evaluated by physicians on several occasions.

    1.    <u>Examination by Dr. Anthony Iuzzolino</u>

Dr. Anthony Iuzzolino has been Plaintiff's treating physician since August 6, 1998, and has issued several reports since that date. (Tr. 153-175.) Dr. Iuzzolino's first report on record, dated August 7, 1998, indicates that with exercise, the Plaintiff's heart rate at three minutes was 80 beats per minute; at four minutes, it was 60 beats per minute. (Tr. 157.) Also, with exercise, the Plaintiff complained of severe shortness of breath, which responded to moving to a supine position and oxygen. (Id.) Dr. Iuzzolino further reported that the Plaintiff had been placed on a Holter monitor the evening of August 5, 1998, which was interpreted on August 6, 1998 and demonstrated periods of sinus pauses 9 to 14 minutes long. (Id.) Prior to this, Plaintiff had been recommended for admission to the hospital but had refused, because of the expense. (Id.) Following the interpretation of the Holter monitor, admission to the hospital was again recommended and Plaintiff acquiesced. (Id.)

On August 31, 1998, Dr. Iuzzolino performed a physical examination and observed that the Plaintiff was obese and did not appear to be in acute distress. (Tr. 154.) The doctor noted

that the Plaintiff was admitted to the hospital telemetry unit. (Id.) He also noted that the Plaintiff underwent cardiac catherization on August 7, 1998, which the Plaintiff tolerated well, without any complications. (Tr. 155.) Dr. Iuzzolino reported a consultation by Dr. Winters and a pulmonary consultation by Dr. Cerrone, but no records of the results are included in the transcript. (Id.) According to Dr. Iuzzolino, Dr. Cerrone's impression was that, as of the date of the report, Plaintiff had significant sleep apnea which, most likely, caused secondary sinus pauses. (Id.) Similarly, Dr. Iuzzolino reported that Dr. Winters' consultation also resulted in the impression that Plaintiff's sinus pauses were likely due to obstructive sleep apnea. (Id.) Upon discharge, Dr. Iuzzolino recorded his instructions to the Plaintiff, which were to refrain from driving. (Tr. 155.)

Dr. Iuzzolino's subsequent discharge summaries are consistent with those recorded in the reports of his initial evaluations with the Plaintiff. (Tr. 162-167.) Also, his summaries confirm that in December 1998, a pacemaker was implanted in Plaintiff and the use of a CPAP was instituted for the treatment of sleep apnea. (Tr. 164.) In addition, Dr. Iuzzolino recorded his March 21, 1999 referral of Plaintiff to Dr. John Franzese for follow up. (Id.) The record also contains a medical examining physician's report form, which Dr. Iuzzolino completed, opining that Plaintiff is unable to work due to recurrent chest pain, malaise and fatigue, pacemaker, exertional dyspnea, coronary artery disease, and hyperlipidemia.

2.   Examination by Dr. John Franzese

Dr. John Franzese, a consulting physician at the Department of Labor's Division of Disability Determination Services, examined Plaintiff and subsequently issued a report of his examination on April 19, 2001. (Tr. 180.) Dr. Franzese reported that, although Plaintiff has

sleep apnea which contributes to dizziness and fatigue, and chest pain radiating to the left shoulder, he is not disabled. (Id.)

### 3.     Examination by Dr. Joyce Nkwonta

On June 12, 2001, Dr. Joyce Nkwonta completed an examination of the Plaintiff on a consultative basis and later completed Plaintiff's physical residual functional capacity assessment. (Tr. 193-96, 199.) In her report, Dr. Nkwonta opined that Plaintiff's sleep apnea syndrome seemed stable with use of the CPAP. (Tr. 192.) She further noted that he still has some daytime somnolence when not actively engaged, as well as fatigue which she believed was most likely secondary to the sleep apnea syndrome. (Id.) Dr. Nkwonta recommended further evaluation of Plaintiff's recurrent dizziness and pacemaker function. (Id.) Dr. Nkwonta's completed physical residual functional capacity assessment of Plaintiff encompassed an evaluation of his exertional limitations, postural limitations, and physical limitations. (Tr. 199-206.) In the exertional limitations section, Dr. Nkwonta indicated that Plaintiff can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk about six hours in an eight hour workday, sit (with normal breaks) for about 6 hours in an eight hour workday, and engage in unlimited pushing and/or pulling. (Tr. 200.) In the postural limitations section, she indicated that Plaintiff is capable of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 201.) Dr. Nkwonta assessed the severity of Plaintiff's symptoms as attributable to a medically determinable impairment, not disproportionate to that expected on the basis of his illness, and consistent with the total medical and non-medical evidence. (Tr. 204.)

    4.    <u>Examination by Dr. R.C. Patel</u>

Dr. R.C. Patel examined the plaintiff on March 12, 2002. (Tr. 211.) Dr. Patel diagnosed hypertension, sleep apnea, and obesity. (Tr. 213.) His stated that the Plaintiff can perform fine and gross movements in both hands and a normal grip and gait. (<u>Id.</u>) He concluded that Plaintiff had no gross neurological deficits. (<u>Id.</u>)

    5.    <u>Testimony of Dr. Donald Peyser</u>

Dr. Donald Peyser, an independent medical expert, testified before ALJ Lissek at the April 2, 2003 hearing. (Tr. 41.) Dr. Peyser testified that, based on his medical experience treating sleep apnea patients who sleep with a CPAP machine at night, the CPAP machine affords the Plaintiff the opportunity to get enough sleep so that any fatigue during the day would be caused by factors such as boredom or deconditioning. (Tr. 46.) He also opined that Plaintiff's arteriosclerotic heart disease is mild in severity. (Tr. 66.)

**DISCUSSION**

**A.    Standard of Review**

The Court has jurisdiction to review the Secretary's decision under 42 U.S.C. § 405(g). The Court must affirm the Secretary's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Stunkard v. Sec'y of Health and Human Services</u>, 841 F.2d 57, 59 (3d Cir. 1988); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but

may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Secretary's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In the determination of whether there is substantial evidence to support the Secretary's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791,793 (D.N.J. 1981). Where there is substantial evidence to support the Secretary's decision, it is of no consequence that the record contains evidence which may also support a different conclusion. Blalock, 483 F.2d at 775.

**B.** **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D.Del. 2002). Finally, while subjective complaints of pain are considered, they are not sufficient alone to establish disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

### C. The Five Step Evaluation Process and the Burden of Proof

Determinations of disability are made by the Commissioner pursuant to the five step process outlined in 20 C.F.R. § 404.1520. At the first step of the process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[3] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant

---

[3] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

9

will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If the claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett, 220 F.3d at 119-20, the Third Circuit held that to deny a claim at step three, the ALJ must specify which listings are relevant and explain why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but must merely ensure "that there be sufficient explanation to provide meaningful review of the step three determination." An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec.,137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will be found to be not disabled under the Act. If the claimant is unable to resume his past work, and his condition is deemed "severe" yet not listed, the evaluation moves to the final step. At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in

the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, claimant will be found not disabled. Id.

**D.   ALJ Lissek's Findings**

ALJ Lissek applied the five step sequential evaluation and determined that the Plaintiff is not disabled. (Tr. 13-18.) At the first step of the analysis, ALJ Lissek noted that, since the onset date of Plaintiff's alleged disability, he has not engaged in substantial gainful activity. (Tr. 13.) At step two, ALJ Lissek concluded that the Plaintiff has an obstructive sleep apnea syndrome and mild arteriosclerotic heart disease, which imposes "more that minimal" restrictions on his ability to perform a full range of basic physical work-related activities, and therefore constitutes a severe medical impairment. (Tr. 13-14.) At the third step, ALJ Lissek noted that, although Plaintiff's illness constitutes a severe medical impairment, Plaintiff's illness does not rise to the level of severity and duration and the clinical criteria of any of the impairments listed in the list of impairments, Appendix I, Subpart P, Regulations No. 4. (Tr. 14.) See also 20 C.F.R. § 404.1520(c).

As required by the fourth step of the inquiry, ALJ Lissek examined whether Plaintiff's residual functional capacity allows the performance of his past relevant work. (Tr. 14.) In her analysis of Plaintiff's residual physical functional capacity, ALJ Lissek duly noted that the regulations require that the Plaintiff's allegations of severe chest pain and his description of his physical and other limitations be considered. (Id.) However, the ALJ concluded that the Plaintiff's descriptions of his physical functional limitations were not consistent with the entirety of the medical evidence. (Id.) The ALJ further concluded that Plaintiff's allegations about the

11

frequency, intensity, and duration of his multiple symptoms, including severe chest pain, "are generally not credible and not consistent with the evidence on record." (Tr. 15.)

The ALJ included several pieces of evidence in her assessment of Plaintiff's residual physical functional capacity. First, she noted that Dr. Iuzzolino's treatment records state that he is unable to find any significant cause for the Plaintiff's dyspnea from a pulmonary standpoint. (Tr. 15.) She further observed that the Plaintiff has not sought or required frequent hospital emergency admission or multiple inpatient hospital admissions for hypertension-related crises or complications. (Id.) Additionally, ALJ Lissek noted that no surgical or other invasive procedures were performed and that Plaintiff's symptoms were controlled with medication and nightly CPAP use. (Id.) ALJ Lissek further points out that Plaintiff's symptoms are remedied by simple or moderate treatment, since use of a CPAP machine has stabilized Plaintiff's symptoms. (Id.) Plaintiff admits both that his apnea-related dizziness subsides when he sits down and that active engagement decreases his daytime somnolence. (Tr. 15.) Finally, the ALJ relies on Dr. Peyser's testimony explaining that, based on his experience treating sleep apnea patients who sleep with a CPAP machine at night, and his review of the entire medical record, including Plaintiff's testimony, the CPAP machine affords the Plaintiff the opportunity to get enough sleep so that any daytime sleepiness would be caused by factors such as boredom, not sleep apnea. (Tr. 15-16.)

The ALJ concluded her step four analysis by determining that relatively little weight should be given to Dr. Iuzzolino's findings. She held that these findings are based on "mere recitation of symptoms rather than objective clinical findings and assessed functional limitations." (Tr. 16) She therefore found that the Plaintiff's exertional and/or non-exertional limitations do not preclude all work activity, and consequently that he retains the residual

12

physical functional capacity "to perform a full, complete, and wide range of sedentary work activity [and] the least exertionally demanding work activity."[4] (Id.) In concluding that the Plaintiff can perform sedentary work, the ALJ also considered the effects of Plaintiff's other alleged medical impairments, and surmised that his other impairments are described as mild or lacking in functional limitations and therefore do not adversely impact his ability to complete a wide range of sedentary work. (Id.)

The ALJ's final step four consideration was whether the Plaintiff retains the residual functional capacity to return to his past relevant work as a truck driver. (Id.) Since his work as a truck driver required medium to heavy exertional activity, and his maximum sustained work capacity is limited to sedentary work activity, the ALJ concluded that he does not retain the residual functional capacity to return to driving a truck. (Tr. 16.)

At step five of her analysis, ALJ Lissek correctly noted that, once it has been established that the Plaintiff cannot return to his past relevant work, the burden of proof shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which the claimant can still perform, considering his age, education, vocational history and residual functional capacity. She concludes that since Plaintiff was 43 years old on the alleged onset date, completed an 11th grade education, and has unskilled prior work experience during the past 15 years, Rule 201.24, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, directs a conclusion that the Plaintiff is "not disabled." (Tr. 17.)

---

[4] ALJ Lissek explains that "the least demanding work activity" would involve lifting no more than ten pounds at a time and occasional lifting or carrying of small articles or tools, prolonged sitting and occasionally walking and standing. (Tr. 16) See also, Regulations No. 4. 20 C.F.R. § 404.1567(a).

  **E.**    <u>**Analysis**</u>

Plaintiff contends that ALJ Lissek's decision should be reversed, or alternatively, remanded to the Commissioner for reconsideration because it was not supported by substantial evidence. (P. Mem. L. at 6.) Plaintiff argues that: 1) ALJ Lissek erred in failing to offer analysis or an evidentiary basis for her finding that the combination of Plaintiff's impairments failed to meet or equal one or more of the listed impairments; 2) ALJ Lissek failed to comply with the Commissioner's regulations regarding evaluation of subjective complaints; 3) ALJ Lissek erred in rejecting the opinions of the Plaintiff's treating physician in favor of a non-examining, non-treating physician; and 4) ALJ Lissek erred by utilizing the vocational rules to direct her conclusion of non-disability. (P. Mem. L. 14-34).

    1.    Did ALJ Lissek Err by Failing to Offer Analysis or an Evidentiary Basis for Her Finding that the Combination of Plaintiff's Impairments Failed to Meet or Equal One or More of the Listing of Impairments?

Plaintiff contends that ALJ Lissek's determination should be reversed and remanded for a new hearing because, in the third step of the sequential analysis, the ALJ did not meet the analysis requirement of <u>Burnett</u>, 220 F.3d at 112. (P. Mem. L. at 10-19.) While the Court does not deem a new hearing the necessary remedy, Plaintiff is correct in asserting that the ALJ's cursory step three determination does not meet the standards of <u>Burnett.</u>

In <u>Burnett</u>, the Third Circuit held that the ALJ's failure to explain the reasons for his decision at step three of his inquiry rendered his ruling "hopelessly inadequate" and "beyond meaningful judicial review," and remanded the case. <u>Burnett</u>, 220 F.3d at 119. The ALJ's opinion in <u>Burnett</u> contained a step three determination that was merely a conclusory statement that the claimant's impairment did not equal the severity of any disabling condition on the listing of impairments. <u>Id.</u> The court remanded the case, requiring the ALJ to "set forth reasons for his

decision." Id.  In the instant matter, ALJ Lissek's step three determination very closely mirrors the step three analysis rejected in Burnett: "according to the medical record, the claimant does not have an impairment or combination of impairments which 'meet' or 'equal' the level of severity and the clinical criteria of any impairment listed in the Listing of Impairments."  (Tr. 14.)  As this is the entirety of ALJ Lissek's step three determination, it is insufficient to allow meaningful judicial review.  While Burnett does not require the ALJ to use specific language or adhere to a particular format, it does require "a discussion of the evidence and an explanation of the reasoning supporting a determination that [the claimant's] 'severe' impairment does not meet or is not equivalent to a listed impairment."  Jones v. Barnhart, 364 F.3d 504, 505 (3d Cir. 1999); Burnett, 220 F.3d at 120.  Since ALJ Lissek altogether failed to discuss the evidence or explain the reasoning supporting her step three analysis, the determination is beyond meaningful judicial review.  The case will be remanded in order that the ALJ may more fully develop the record.

    2.    Plaintiff's Other Arguments Are Without Merit.

Plaintiff claims that the ALJ failed to analyze properly Plaintiff's subjective complaints. In assessing whether the claimant is disabled, the ALJ must give consideration to the claimant's subjective complaints of pain.  10 C.F.R. §§ 404.1529, 416.929; Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986).  However, subjective complaints alone will not establish that a claimant is disabled.  Dorf, 794 F.2d at 901.  Plaintiff "bears the burden of demonstrating that her subjective complaints were substantiated by medical evidence."  Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996).  The Alexander court noted that "even in situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that claim if there is a rational basis to do so."  Alexander, 927 F. Supp. at 795.  The record indicates that Plaintiff has been evaluated by several physicians

15

for his alleged chest pain and other subjective complaints. However, tests performed by both Drs. Nkwonta and Patel revealed no cardiac abnormalities but, rather, indicated regular sinus rhythm and no abnormal heart sounds. ( Tr. 211-217, 192-197.) Furthermore, Dr. Iuzzolino, Plaintiff's treating physician, noted that he was unable to find any significant pulmonary cause for the Plaintiff's dyspnea. (Tr. 220.) Therefore, ALJ Lissek's conclusion that Plaintiff's subjective complaints lack credibility is supported by substantial evidence.

Second, Plaintiff argues that the ALJ rejected the opinion of the treating physician without adequate medical contradiction. When a treating physician's opinion is not "well supported" by clinical and laboratory techniques and is not consistent with the entire record, the evidence must be weighed in order to reach a decision. 20 C.F.R. § 404.1527. Furthermore, an "ALJ can choose to accept the findings of evaluating, non-examining state agency physicians over the opinions of treating physicians where the treating physicians' opinions were 'conclusory and unsupported by medical evidence' and contradictory to other medical evidence of record." Myers v. Barnhart, 57 Fed. Appx. 990, 996 (3d Cir. 2003) (citing Jones v. Sullivan 954 F.2d 1225, 1229 (3d Cir. 1991)). ALJ Lissek considered the opinion of Plaintiff's treating physician, Dr. Iuzzolino, but found it unsupported. (Tr.14.) There is no objective medical evidence to support Dr. Iuzzolino's opinion that, due to his cardiac symptoms, the Plaintiff is unable to work. Dr. Iuzzolino himself admits his inability to find a cause for Plaintiff's dyspnea and records no cause for Plaintiff's alleged chest pain. (Tr. 219-229.) Plaintiff's argument that the ALJ did not adequately consider Dr. Iuzzolino's opinion is without merit.

Plaintiff's final argument is that ALJ Lissek erred by utilizing the vocational rules to direct her conclusion of non-disability. In evaluating a claimant's ability to work in step five of the sequential analysis, both exertional and non-exertional limitations must be included. Sykes v.

Apfel, 228 F.3d 259 (3d Cir. 2000).  When determining the effect of the claimant's non-exertional limitations, the ALJ cannot rely exclusively on the medical-vocational guidelines or "grids" found in the regulations but must supplement the grids by relying on "the testimony of a vocational expert or other similar evidence such as a learned treatise."  Sykes, 228 F.3d at 273.  The requirements in Sykes are inapplicable when there is no objective medical evidence of a non-exertional limitation.  Since the medical evidence on record establishes that the Plaintiff does not have a non-exertional limitation, Sykes is inapplicable.  Therefore, Plaintiff's claim that the ALJ erred by utilizing the vocational rules is without merit.

## CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's determination fails to meet the Third Circuit procedural standards established in Burnett.  This case is remanded so that the Administrative Law Judge may develop the record and explain the findings at step three of the analysis, including an explanation of the determination that the Plaintiff's impairment does not meet or medically equal one of the listed impairments.

Dated: February 3, 2006

                                          S/Joseph A. Greenaway, Jr.
                                          JOSEPH A. GREENAWAY, JR., U.S.D.J.